IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ASHLEY KING,

    Plaintiff,

vs.                                        Case No. 11-2300-JTM

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,

    Defendant.

MEMORANDUM AND ORDER

Ashley King's petition for review of a final decision of the Commissioner of Social Security (Dkt. No. 9) is before the court. For the following reasons, the court reverses the Commissioner's decision and remands to the ALJ for further proceedings consistent with this Memorandum and Order.

**I. Background**

Ms. King filed her application for disability and supplemental security income benefits on October 20, 2008. Her application was denied initially and upon reconsideration. On June 17, 2010, after a hearing, the Administrative Law Judge determined that Ms. King was not disabled under the Act since October 20, 2008. On May 4, 2011, the Appeals Council of the Social Security Administration denied her request for review. Thereafter, Ms. King filed this petition for review.

The medical evidence and hearing testimony are set forth in the ALJ's decision and

incorporated herein. The ALJ concluded that Ms. King suffered from severe impairments because of degenerative disc disease of the lumbar and cervical spines. But he found that she did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Ms. King had the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) in that the claimant can lift 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours out of an 8 hour work day with normal breaks; sit for up to 6 hours out of an 8 hour work day with normal breaks; and push and pull the same weights; except the claimant cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to vibration and occupational hazards, such as dangerous moving machinery and unprotected heights.

(Tr. 18). After analyzing the evidence, the ALJ concluded that Ms. King could not perform her past relevant work, but that she could perform other jobs existing in the national economy. In finding so, the ALJ gave the opinions expressed by Dr. Joseph Spurlock, her treating physician, "significant," "little," and "some" weight. The ALJ also gave the opinion of the state's examining physician, Dr. James N. Warren, "significant" weight. He gave little weight to the opinions expressed by Ms. King's physical therapist and her mother. And the ALJ found that some of Ms. King's testimony was not credible. Ultimately, the ALJ found that Ms. King has not been disabled since October 20, 2008.

In this petition for review, Ms. King alleges four grounds of error: (1) that the ALJ erred by failing to consider all the evidence, including the observations of third parties; (2) that the ALJ erred in failing to assign controlling or greatest weight to her treating physician; (3) that the ALJ erred by relying on the opinion of Dr. Warren; and (4) that the ALJ erred at Step 5 of the sequential process by not using a vocational expert and by not considering her pain.

**II. Legal Standard**

This court's standard of review is governed by the Social Security Act, which provides, in part, that the "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court reviews the Commissioner's decision only to determine whether the decision was free from legal error and supported by substantial evidence. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is "such evidence that a reasonable mind might accept to support the conclusion." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). Evidence is insubstantial when it is overwhelmingly contradicted by other evidence. *Id*. The court will neither reweigh the evidence nor substitute its judgment for that of the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). But the findings will not be affirmed without scrutinizing the entire record to determine if the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

An individual is disabled only if the individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The physical or mental impairment must be so severe that the individual cannot perform any of his or her past relevant work, and cannot engage in other substantial gainful work existing in the national economy, considering the individuals age, education, and work experience. *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920.

The Social Security Administration, pursuant to the Social Security Act, has established a five-step evaluation process for determining whether an individual is disabled. *Allen v. Barnhart*,

357 F.3d 1140, 1142 (10th Cir. 2004); 20 C.F.R. § 404.1520(a). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). The first three steps require the Commissioner to determine: (1) whether the claimant has engaged in gainful activity since the disability began; (2) whether the claimant has severe physical or mental impairments; and (3) whether the severity of the impairments meet or equal a specific list of impairments. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. § 404.1520. When the impairment does not meet or equal a listed impairment, the ALJ must "make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(e).

After assessing the claimant's residual functional capacity, the Commissioner moves to steps four and five, which require assessing whether the claimant can perform any past relevant work and whether the individual can generally perform other work existing in the national economy. *Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520. While the claimant bears the burden of proof in steps one through four to prove that the claimant has a disability that prevents performance of past relevant work, the Commissioner bears the burden at step five to prove that there are jobs in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

## III. Legal Conclusions

### A. Third-Party Observations

First, Ms. King argues that the ALJ erred by failing to consider the observations made by J. Ritter and by wrongly evaluating the testimony of her mother. Mr. Ritter, a social security field office employee, made notes based on an interview he had with Ms. King on October 20, 2008. He

recorded that Ms. King had difficulty concentrating, sitting, standing, and walking. He also noted that Ms. King "wlaked [sic] in wearing a back brace and limping, complained of pain during interview lasting more than one hour." (Tr. 118). Ms. King contends that the ALJ's failure to consider this evidence when making the credibility determination of her statements and when determining her RFC constitutes reversible error. In support of her position, she cites several Social Security Rulings and Regulations.

When determining the credibility of an individual's statement, Social Security Ruling 96-7p requires the ALJ to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual." 1996 WL 374186, at *1 (July 2, 1996). "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects." *Id.* at *4. Further, the Ruling specifically requires that the ALJ "*must* consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone." *Id.* at *5 (emphasis added). SSA Ruling 96-8p also requires an ALJ to consider "all relevant evidence in the case record" when making an RFC determination, including "[r]ecorded observations." 1996 WL 374184, at * 2 (July 2, 1996). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." *Id.*

at *5. SSA rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). Additionally, when evaluating the intensity and persistence of an individual's symptoms, 20 C.F.R. § 416.929(c)(1) requires the ALJ to consider "all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you." The ALJ must consider "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and *observations by our employees* and other persons." *Id.* § 416.929(c)(3) (emphasis added). And 20 C.F.R. § 416.945(a)(3) requires the ALJ to "consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons" when assessing an individual's RFC.

Here, the ALJ failed to acknowledge Mr. Ritter's written comments about Ms. King. This requires remand. *See Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (reversing and remanding when an ALJ failed to incorporate the testimony of petitioner's wife and failed to discuss why he rejected that testimony). The ALJ's opinion generally states that he considered "the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p." (Tr. 18). But citing the proper Regulations and Rules does not relieve the ALJ from the burden of analyzing the evidence.

The Commissioner does not dispute that the ALJ failed to discuss Mr. Ritter's notes, but argues Mr. Ritter's observations were controverted by other facts in the record. Specifically, the Commissioner states that Ms. King did not indicate she had concentration problems in 2008 or 2009.

And her mother did not indicate Ms. King had any problems concentrating. It may be that Mr. Ritter's observations are contrary to the weight of other credible evidence, but the ALJ must analyze Mr. Ritter's observations as they bear on Ms. King's credibility in the first instance. Post hoc rationalizations contained in the Commissioner's Response brief are insufficient if they have no basis in the ALJ's opinion. *See Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Therefore, this court remands this issue to the ALJ.

Ms. King also contends that the ALJ improperly evaluated her mother's testimony. The ALJ stated:

> The record also contains an adult function report completed by the claimant's mother (Exhibit 10E). Her opinion is given little weight as it is a lay opinion based on casual observation rather than objective medical and testing. It is also based upon loyalties of family. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe.

(Tr. 23). Ms. King contends it was error to assign her mother's opinion little weight simply because it was not based on objective medical testing. The Commissioner argues only that the mother's opinion was cumulative and "may be discounted for the same reasons that Plaintiff's allegations were found not fully credible." Dkt. No. 10, pg. 11.

The Regulations and Rulings regarding third-party observations and opinions do not require that lay testimony be given little weight simply because it is not based on objective medical testing. Rather, as noted, they recognize that subjective descriptions of symptoms by lay witnesses can suggest a greater severity of impairment than can be shown by objective medical evidence. *See* SSR 96-8p, at*5; SSR 96-7p, at *1; *see also* 20 C.F.R. § 416.929(c)(3); 20 C.F.R. § 416.945(a)(3), (e). A fair reading of the ALJ's findings show that he discounted Ms. King's mother's testimony because it was lay testimony. It was only after drawing that conclusion that he also indicated he discounted

her opinion because it was based on family loyalties and that it did not outweigh the accumulated medical evidence. Under the Rulings and Regulations cited above, the ALJ must reevaluate the testimony without discounting it simply as lay witness evidence. The Commissioner's argument that the testimony was cumulative is unavailing. The ALJ made no such finding, and this court cannot assume the ALJ discounted the mother's testimony as cumulative if not clearly stated in the opinion. Therefore, the court remands this issue to the ALJ.

*B. The Physicians' Opinions*

Next, Ms. King contends that the ALJ erred by not giving the opinions of her treating physician, Dr. Spurlock, controlling weight. The ALJ evaluated three opinions given by Dr. Spurlock in June 2009, April 2010, and sometime in 2007. The ALJ found the June 2009, opinion—recommending that Ms. King "should consider sedentary work without repeated bending, stooping, and lifting"—was "generally consistent with the medical record . . . [but] inconsistent with other opinions by Dr. Spurlock . . . and he has acknowledged he is not an expert in this area and defers to the conclusions of those who are." (Tr. 22) (alterations added). The ALJ assigned this opinion "significant, but not controlling weight." *Id.* The ALJ assigned little weight to the June 2009, opinion recommending that Ms. King find a lawyer and file for disability because it was "grossly inconsistent with the functional abilities he reported, limiting the claimant to sedentary work, and it concerns an issue reserved to the Commissioner under SSR 96-5p." *Id.* Next, the ALJ gave the April 2010, opinion ("light work would be most appropriate for the claimant based on the ARCON testing") "some" weight because Dr. Spurlock had not seen Ms. King in the nine months prior to giving the opinion. The ALJ found it less persuasive than the June 2009, opinion. Last, the ALJ gave Dr.

8

Spurlock's 2007, opinion—that Ms. King was not able to return to work—"little" weight because "[t]his is a determination reserved to the Commissioner under SSR 96-5p, and, in context, it appears Dr. Spurlock is referring to the claimant's then-current position, which is consistent with the finding in this case that the claimant cannot return to past relevant work." *Id.* at 23.

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2). If so, the ALJ must confirm that it is consistent with other substantial evidence. *Id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If the treating source opinion is not given controlling weight, the inquiry does not end. *Id.* A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). After considering the factors, the ALJ must give reasons for the weight he gives the treating source opinion. *Watkins*, 350 F.3d at 1301. If the ALJ completely rejects the opinion, he must provide specific, legitimate reasons. *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.

1996)).

Because the ALJ did not assign Dr. Spurlock's opinion's controlling weight, this court must decide whether the ALJ determined if Dr. Spurlock's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence. *See Watkins*, 350 F.3d at 1300. Here, the ALJ did not indicate whether Dr. Spurlock's opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques. It appears he only considered whether Dr. Spurlock's opinions were consistent with each other and the other substantial evidence. Because the ALJ failed to make this initial finding, this court must remand this issue to the ALJ. *See Watkins*, 350 F.3d at 1300; *see also* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

Additionally, the ALJ did not discuss whether Dr. Spurlock's 2007, and April 2010, opinions were consistent with other substantial evidence. Rather, he gave the opinions "some" and "little" weight because Dr. Spurlock had not seen Ms. King in nine months prior to April 2010, and because the 2007, opinion was a decision reserved for the Commissioner. Oddly, the ALJ also gave the 2007, opinion little weight because it "was consistent with the finding in this case that the claimant cannot return to past relevant work." (Tr. 23). Upon remand, the ALJ must discuss whether these opinions are consistent with other substantial evidence.

The ALJ did, however, find that Dr. Spurlock's 2009, opinions were inconsistent with each other. The ALJ found the portion of the opinion recommending Ms. King file for disability "grossly inconsistent with the functional abilities he reported, limiting the claimant to sedentary work." (Tr. 22). The ALJ also stated that the functional limitations in the opinion are "generally consistent with the medical record . . . however, inconsistent with other opinions provided by Dr. Spurlock." *Id.* Yet

10

the ALJ does not specifically define those inconsistencies. Careful consideration of Dr. Spurlock's June 2009, opinions show that they are consistent. Dr. Spurlock's reference to "[d]isability consideration" is not "grossly inconsistent" with the functional abilities he reported. Specifically, he found Ms. King should consider sedentary activity devoid of manual labor such as bending, stooping, or lifting, if she could wean herself off the pain medication and learn to cope with her chronic pain. He did not unequivocally find that Ms. King was capable of returning to work immediately. And he recommended disability consideration if she could not successfully deal with the pain. The opinions are not mutually exclusive.

In sum, the ALJ did not follow the procedure for determining when a treating physician's opinion is not entitled to controlling weight because he did not indicate that Dr. Spurlock's opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques, and he did not adequately state the reasons why Dr. Spurlock's opinions were inconsistent with other substantial evidence. This court must remand this issue to the ALJ so he can determine, consistent with this Memorandum and Order, the weight to be given to Dr. Spurlock's opinions. This court need not address whether the ALJ properly applied the 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 factors.

Ms. King also contends the ALJ erred by giving Dr. Warren's opinion "controlling or greatest" weight. The ALJ stated:

> An opinion was provided by James N. Warren, M.D., who examined the claimant's records on behalf of the State Disability Determination Service (Exhibit 25F). Dr. Warren noted the claimant was limited to a range of sedentary work, as described in the above residual functional capacity. This opinion is consistent with the longitudinal medical record, the claimant's credible allegations and testimony, and other opinions provided in this case, as discussed below. As a result, the undersigned finds this opinion is persuasive and gives it significant weight.

11

(Tr. 22). Unlike Ms. King alleges, the ALJ gave Dr. Warren's opinion "significant," not "controlling or greatest" weight. SSR 96-6p mandates that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." 1997 WL 374180, at *1 (July 2, 1996). The ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* at *2. If an ALJ properly explains the weight given to such an opinion, he is not prohibited from assigning that opinion substantial weight. *Kizer ex rel. Kizer v. Barnhart*, No. 04-1394, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (citing SSR 96-6p) ("In appropriate circumstances, opinions from State Agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *see also* 20 C.F.R. § 404.1527(e)(2)(i)-(ii).

Here, the ALJ properly considered Dr. Warren's opinion in accordance with SSR 96-6p, and he adequately explained his reasons for giving that opinion substantial weight. Like Dr. Spurlock, Dr. Warren noted that Ms. King was limited to a range of sedentary work. The ALJ also found the opinion consistent with the longitudinal medical record and consistent with Ms. King's credible testimony. Therefore, the ALJ did not err in assigning Dr. Warren's opinion substantial weight, and substantial evidence supports such a finding.

*C. Vocational Expert Testimony and Nonexertional Limitations*

At Step 5, the ALJ determined that Ms. King had the RFC to perform sedentary work and

that her nonexertional limitations had little or no effect on her ability to perform sedentary work. Thus, he found Ms. King was capable of performing a significant number of jobs existing in the national economy. Ms. King contends the ALJ erred by not using a vocational expert and by not considering the nonexertional impairment of pain. The Commissioner argues such testimony was unnecessary because the nonexertional limitations did not significantly reduce her unskilled sedentary job base.

"Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the defendant must generally utilize expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Gilbert v. Astrue*, No. 06-1230, 2007 U.S. Dist. LEXIS 38806, at *12 (D. Kan. Mar. 5, 2007) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991)); *see also* SSR 96-9p, 1996 WL 374185, at *5 (July 2, 1996) ("In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert."). But vocational expert testimony is not always required when a claimant has both exertional and nonexertional impairments. *Gilbert*, 2007 U.S. Dist. LEXIS, at *12.

Exertional impairments include an individual's restrictions of physical strength and defines an individual's ability to perform each of the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-9p, 1996 WL 374185, at *5. Nonexertional impairments include any work-related limitations that are not exertional, including limitations in mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, and environmental limitations. *Id.* Additionally, "[p]ain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant."

*Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993). The existence of nonexertional impairments does not preclude reliance on the medical-vocational guidelines (grids). *Gilbert*, 2007 U.S. Dist. LEXIS, at *12. First, the court must determine whether the nonexertional impairment interferes with the claimant's ability to work. *Id.* Second, "[t]he grids should not be applied conclusively in a particular case unless the claimant could perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capabilities to perform most of the jobs in that range. *Id.* (citing *Thompson*, 987 F.2d at 1488).

"'[S]edentary work' represents a significantly restricted range of work." SSR 96-9p, 1996 WL 374185 at *3. But there are approximately 200 separate unskilled sedentary occupations, each representing numerous jobs, in the national economy. *Id.* A claimant restricted to sedentary work is not disabled unless the full range of sedentary work is significantly eroded. *See id.* A person that can lift 10 pounds occasionally, stand and walk for 2 hours out of 8 hours, and sit approximately 6 out of 8 hours can perform the full range of unskilled sedentary jobs. *See id.* at *6-7.

Here, the ALJ concluded Ms. King had exertional and nonexertional limitations. Specifically, the ALJ concluded that Ms. King has the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) in that the claimant can lift 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours out of an 8 hour work day with normal breaks; sit for up to 6 hours out of an 8 hour work day with normal breaks; and push and pull the same weights; except the claimant cannot climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to vibration and occupational hazards, such as dangerous moving machinery and unprotected heights.

(Tr. 18). The ALJ determined Ms. King could perform a full range of sedentary work given her exertional limitations. The ALJ concluded Ms. King had nonexertional limitations including

restrictions on climbing, stooping, kneeling, crawling, and crouching. But he found that these nonexertional limitations did not significantly erode the unskilled sedentary job base. This conclusion is supported by the Social Security Rulings. *See* 96-9p ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."). That the ALJ did not use a vocational expert to analyze these nonexertional limitations and their effect on Ms. King's ability to perform jobs in the national economy was not in error.

But the ALJ did not determine whether Ms. King's pain interferes with her ability to work. Pain is a nonexertional impairment that must be taken into consideration unless substantial evidence shows the pain is insignificant. *See Thompson*, 987 F.2d at 1490-91. The record shows that Ms. King's pain was not insignificant. Dr. Spulock's opinion, which the ALJ accorded "significant" weight, concluded that: "The functional limitations you have from pain (and pain meds) will make working difficult. Again, if you can wean away from pain meds and allow time for psychological adjustment to coping with chronic pain, many people can eventually get back to a certain level of productivity." (Tr. 467). Therefore, the court remands this issue to the ALJ to consider whether Ms. King's pain substantially eroded the unskilled sedentary job base.

**IV. Conclusion**

This court sustains Ms. King's motion and remands this case to the ALJ. Upon remand, the ALJ must consider Dr. Ritter's observations and properly weigh Ms. King's mother's testimony. The ALJ must also determine whether Dr. Spurlock's opinions were well-supported by medically

acceptable clinical and laboratory diagnostic techniques and whether they were consistent with other substantial evidence. Last, the ALJ must consider Ms. King's nonexertional pain limitations to determine whether her pain significantly erodes the unskilled sedentary job base.

IT IS ACCORDINGLY ORDERED this 12th day of April 2012, that the decision of the Commissioner is reversed, and that the case is remanded to the ALJ for further proceedings in accordance with this Memorandum and Order.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE